```
     M77WterC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                            22 Cr. 343 (JMF)

 5   BOSS TERRELL,

 6              Defendant.
                                              Conference
 7   ------------------------------x

 8                                            New York, N.Y.
                                              July 7, 2022
 9                                            4:30 p.m.

10   Before:

11
                     HON. JESSE M. FURMAN,
12
                                              District Judge
13
                            APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  THOMAS JOHN WRIGHT
          Assistant United States Attorney
17
     BRUCE D. KOFFSKY
18        Attorney for Defendant

19

20

21

22

23

24

25
```

M77WterC

1        (Case called)

2        MR. WRIGHT:  Good afternoon, your Honor.  For the
3   government, Assistant United States Attorney Thomas John
4   Wright.

5        THE COURT:  Good afternoon, Mr. Wright.

6        MR. KOFFSKY:  Good afternoon, your Honor.  Attorney
7   Bruce Koffsky.  I'm here with Mr. Boss Terrell.  Mr. Ricco was
8   supposed to be here, but his dance card was full, and he begs
9   the Court's leave to allow him not to be here today.

10        THE COURT:  All right.  I think you're more than able
11   to handle it, so that's fine.  Obviously, by order earlier this
12   week, I think I appointed Mr. Ricco as learned counsel given
13   the nature of the charges in this case.

14        All right.  We're here for an initial conference.

15        My understanding, Mr. Wright, is that Mr. Terrell was
16   arraigned before the magistrate judge and that the magistrate
17   judge took care of the Rule 5(f) oral and written order.  Is
18   that correct?

19        MR. WRIGHT:  That's my understanding, your Honor.

20        THE COURT:  All right.

21        Do you want to tell me a little bit just by way of
22   background?  I've reviewed the indictment, but beyond what I
23   would have learned from that review, if you can tell me
24   anything by way of background and then let me know what the
25   nature and status of discovery is, that would be helpful.

1             MR. WRIGHT:  Certainly, your Honor.

2             Your Honor, the indictment, as your Honor's aware,

3    charges, in the first count, a racketeering conspiracy whose

4    duration is alleged to have run from in or about 2015 through

5    the present.  So there's a substantial period of time in which

6    the defendant is alleged to have been an active member of the

7    conspiracy.

8             I've spoken, your Honor, with both Mr. Koffsky and

9    also Mr. Ricco separately following his appointment.  The

10   discovery in the case principally consists of video recordings

11   largely from surveillance cameras tied to multiple incidents,

12   including both the murder and attempted murder that are alleged

13   in Counts Two and Four of the indictment.

14            In addition, your Honor, there are records relating to

15   different businesses that had been the focus of different

16   robberies during the case as well as a substantial volume of

17   search warrants on cellular devices that had been seized

18   previously from the defendant as well as other alleged members

19   of the conspiracy.

20            I've spoken, as I said, your Honor, with Mr. Ricco and

21   Mr. Koffsky, and I think that if, as an initial matter --

22   Mr. Koffsky, I know, is going to provide the government with

23   three external drives of a size that I think should be able to

24   accommodate the initial provision of discovery.  I anticipate

25   that we'll have that discovery back to Mr. Koffsky and

1  Mr. Ricco by the end of this month, approximately three weeks,
2  to Friday, July 29.  And we'll obviously be in very active
3  communication with them concerning their client's ability to
4  access certain parts of that discovery at the MDC.
5           THE COURT:  OK.  Just to, I guess, elaborate a little
6  on a couple of those things, I would obviously like --
7           I assume that's Mr. Terrell's family member here.
8           MR. KOFFSKY:  Excuse me, your Honor.
9           THE COURT:  All right.
10          MR. KOFFSKY:  Thank you, your Honor.
11          THE COURT:  All right.  Sorry.  I obviously would very
12 much like to --
13          THE DEFENDANT:  I'm sorry, your Honor.
14          THE COURT:  -- enable them to be here, but I also need
15 to make sure everybody can hear.
16          THE DEFENDANT:  I'm sorry, your Honor.  It's OK.  I
17 understand.
18          THE COURT:  Zero apologies necessary.  And if the
19 child calms down and is quiet, they're more than welcome to
20 come back in.  I just need to make sure we can all hear one
21 another.
22          THE DEFENDANT:  Yes.  I understand, your Honor.
23          THE COURT:  Thank you.
24          Mr. Wright, I think you mentioned searches or seizures
25 of various electronic devices and contents thereof.  Can you

1  tell me the basis for those searches and how many devices we're
2  talking about?
3          MR. WRIGHT:  Your Honor, there are approximately a
4  dozen devices that have been seized at different times and
5  searched pursuant to previously issued warrants, and the
6  results of those seizures include the data that was extracted,
7  in certain cases successfully, from the devices.
8          THE COURT:  And how many allegedly belonging to this
9  defendant as opposed to others?
10         MR. WRIGHT:  I believe approximately three, your
11 Honor.
12         THE COURT:  Three belonging to this defendant.
13         MR. WRIGHT:  Correct, your Honor.
14         THE COURT:  All right.
15         And did he make any postarrest statements?
16         MR. WRIGHT:  None, your Honor, that I think are
17 material at this stage of the case and with respect to the
18 discovery and disclosure obligations.
19         THE COURT:  All right.  Well, I would urge you to err
20 on the side of caution and disclose any statements that he made
21 when in custody or following arrest, whether you deem them to
22 be material or not.
23         MR. WRIGHT:  Certainly, your Honor.
24         And I was only speaking with that caveat; I believe he
25 did provide pedigree information for himself, your Honor, with

1  respect to his residence and contact information.  Aside from
2  that, I'm not aware of any other postarrest statements.
3             THE COURT:  All right.
4             And I don't think you said anything about wiretaps,
5  but any wiretaps?
6             MR. WRIGHT:  No, your Honor.
7             THE COURT:  All right.
8             And do you anticipate, to the extent that you can say
9  anything in this setting, any superseding indictments, either
10 to add additional charges or add additional defendants?
11            MR. WRIGHT:  Your Honor, I do anticipate that there
12 likely will be a superseding instrument.  I'm not yet certain
13 of its nature.
14            THE COURT:  Do we know any sense of timing on that, or
15 too hard to say?
16            MR. WRIGHT:  Your Honor, I'm not certain, and
17 obviously, in the utmost good faith to the Court as well as to
18 the defendant and his counsel, I speak cautiously only because
19 I'm really not certain as to the timing.  But I anticipate it
20 will be within the next three months.
21            THE COURT:  All right.
22            And you said you could make discovery of what you have
23 in your possession within three weeks, is that right?
24            MR. WRIGHT:  Yes, your Honor.
25            THE COURT:  And finally, to the extent that there are

M77WterC

1  victims or family members of victims who would be entitled to
2  notice under the CVRA, or any other statute for that matter,
3  has the government made the appropriate notifications?  Do you
4  have a system in place to do so?
5           MR. WRIGHT:  Yes, your Honor.
6           THE COURT:  All right.  Very good.
7           And one last question.  What is the status, to the
8  extent that these are capital-eligible crimes, what's the
9  status of that process?
10          MR. WRIGHT:  Your Honor, that process is ongoing.  It
11 has begun, and it is ongoing.
12          THE COURT:  And do you, sitting here today, have any
13 guess of how long it would take, either based on how long these
14 things are taking these days or anything specific to this case?
15          MR. WRIGHT:  Your Honor, I don't believe that there's
16 anything specific to this case that will impact the timetable,
17 and that timetable has varied so substantially during the past
18 two and a half years that I'm really not certain of when it
19 will have completed.
20          THE COURT:  All right.  Well, I definitely would like
21 to make sure that it is completed expeditiously.  I did have
22 one case that only came to trial this year, and part of the
23 reason that it was so extensively delayed was that that process
24 took close to two years, which was very much to my frustration.
25 So I will want to avoid that here.

         All right.  I'll direct the government to produce discovery, whatever is in its possession, recognizing that the obligation to produce discovery is a continuing one and, therefore, would apply to anything that comes into its possession after, by July 29.  That's three weeks from tomorrow.  And anything that the government obtains thereafter should promptly be disclosed in accordance with its continuing obligations.

         Mr. Koffsky, my usual practice, as I think you know, is to set a pretrial motion deadline, but in some cases of this nature, counsel request to put that off pending a decision on the question of whether to seek the death penalty or not.

         What's your view on that?

         MR. KOFFSKY:  Excuse me one second, your Honor.  It's my first day with hearing aids.  I apologize.

         THE COURT:  No worries.  I hope they're working.

         MR. KOFFSKY:  Your Honor, I'm going to request that the Court not set a motions timetable.  It's my belief that we will be successful on the capital-eligible side, and I certainly hope that it happens during this administration.

         As the Court may know, not a single authorized case has come out of this administration, and in fact, there have been more than a dozen deauthorized cases that are coming out of this administration.

         So Mr. Ricco and I are going to get on our mitigation

M77WterC

case and do as much as we can and assist the government in whatever submission they make to Washington. But before -- so I'm going to ask that the Court hold off on setting a motions schedule until we get word from Washington that this is going to be a deauthorized case or that there's no authorization in this case, and we can go forward as if it's any other, run-of-the-mill Southern District indictment.

THE COURT: OK. I certainly hope it's in this administration, not because I have any interest in the outcome but because if it's not this administration, that means it's taken very, very long.

In any event, that's fine with me, and I will defer setting the motion deadline for now.

Anyone have a thought on how far out we should schedule the next conference to see where things stand, recognizing that if all you're going to tell me at that conference is that you're still waiting, we can adjourn it by letter as well?

Mr. Wright.

MR. WRIGHT: Your Honor, if I could take one minute with Mr. Koffsky?

THE COURT: Yes.

MR. WRIGHT: Thank you.

THE COURT: Mr. Koffsky, strictly speaking, you do have to wear your mask.

1          MR. KOFFSKY:  Thank you, your Honor.

2          THE COURT:  Thank you.

3          MR. WRIGHT:  Your Honor, Mr. Koffsky proposes 90 days,
4    and the government's in agreement that that's a reasonable time
5    frame, I think, to have a material update for the Court on one
6    or another point, and so we'd propose that with him.

7          THE COURT: All right.  Why don't I have you back,
8    let's say, October 6 at 2:30 in the afternoon.

9          Does that work?

10         MR. WRIGHT:  It does for the government.  Thank you,
11   your Honor.

12         THE COURT:  Mr. Koffsky.

13         Could you just use the microphone, Mr. Koffsky.  I
14   don't know where it is.

15         MR. KOFFSKY:  Certainly, your Honor.

16         THE COURT:  All right.  October 6 at 2:30.

17         MR. KOFFSKY:  That's great.  Thank you, your Honor.

18         THE COURT:  All right.  And as I more or less just
19   said, if you're still waiting, you're welcome, if everyone
20   agrees, to put in a letter requesting an adjournment and tell
21   me where things stand and how long you expect it to take,
22   recognizing that I will want to ensure that things move along
23   expeditiously if I can do anything about it.  Bottom line is if
24   you're just going to tell me that there's nothing to tell me,
25   you can tell me that by letter.  But otherwise, I will plan to

M77WterC

1    see you on October 6.
2         Is there an application on the Speedy Trial Act,
3    Mr. Wright?
4         MR. WRIGHT:  Yes, your Honor.
5         The government does respectfully request that the
6    Court exclude time for speedy trial purposes from today through
7    October 6, 2022, on the basis that the interests of the public
8    and the defendant, Mr. Terrell, in a speedy trial are
9    outweighed here by his interest in both beginning to receive
10   and review discovery with his counsel and learned counsel as
11   well as preparing any mitigation submissions, as counsel
12   referenced, in connection with the authorization of any
13   potential sentence in this case.
14        THE COURT:  Any objection, Mr. Koffsky?
15        MR. KOFFSKY:  No objection, your Honor.
16        THE COURT:  All right.
17        I will exclude time under the Speedy Trial Act between
18   today and October 6, 2022.  I find that the ends of justice
19   served by excluding that time outweigh the interests of the
20   public and the defendant in a speedy trial, to ensure that the
21   defendant and counsel have an opportunity to begin reviewing
22   discovery with an eye toward any motions that may be filed; to
23   give counsel and the defendant an opportunity to prepare the
24   mitigation application with respect to the question of
25   punishment, and really for those purposes.

1            Mr. Koffsky, I would urge you, obviously, to take

2    advantage of the time between now and October 6 to begin

3    reviewing discovery so that when it is time to set a motion

4    deadline, you're in a better position to prepare any motions

5    and/or tell me if you have any motions to file.  I'm not going

6    to set the deadline today, but I certainly would hope you'll

7    use the next few months to review things with an eye toward

8    telling me what your motion situation is.

9            MR. KOFFSKY:  Certainly, your Honor.

10           Mr. Ricco and I have made plans to talk to Alan Nelson

11   at the Second Circuit for budgeting of people who will assist

12   us on that and with an eye towards whatever motions we'll file

13   once the capital decision has been made by Washington.  We'll

14   be prepared to file expeditiously, your Honor.

15           THE COURT:  Great.

16           And to the extent that you need approval, any

17   budgeting-type approval, you know presumably how to get that

18   from me, if you need anything from me.

19           Mr. Wright made reference to ensuring that Mr. Terrell

20   has access to the discovery.  I haven't actually heard -- for

21   all the problems I've heard about the MDC in the last year or

22   two, that's not one that I've heard a whole lot recently, which

23   is welcome news.  Maybe that means that things are better on

24   that front, but in any event, I certainly want to make sure

25   that Mr. Terrell has an opportunity to review the discovery as

M77WterC

1  well.
2          So Mr. Wright, I would ask that you take steps to
3  ensure that and, obviously, speak with counsel to ensure it as
4  well.
5          Anything else?
6          From the government.
7          MR. WRIGHT:  Nothing further, your Honor.
8          THE COURT:  Mr. Koffsky.
9          MR. KOFFSKY:  Nothing.  Thank you, your Honor.
10         THE COURT:  All right.  In that case, we are
11 adjourned.  Have a wonderful afternoon and evening.
12         Thank you.
13         (Adjourned)